**UNITED STATES of America,**

v.

**Jose Manuel HERNANDEZ, a/k/a Samuel Perez, Defendant.**

**No. 67 Cr. 942.**

United States District Court
S. D. New York.

Jan. 24, 1968.

Robert M. Morgenthau, U. S. Atty., by Asst. U. S. Atty., Paul B. Galvani, New York City, for the United States.

Vincent J. Velella, Henry K. Chapman, New York City, for defendant.

MOTLEY, District Judge.

*Memorandum Decision and Order*

Defendant is charged with a violation of Title 21, Sections 173 and 174, in that he did unlawfully, wilfully, and knowingly, receive, conceal and facilitate the transportation and concealment of approximately 333 grams of heroin hydrochloride, after, and knowing that, such

drugs had been brought into the United States contrary to law.

Defendant moved to suppress the heroin on the grounds that it was unlawfully seized from his dwelling. Fed.R.Cr.P. 41(e). The government admitted that the heroin was seized without a warrant and conceded that it had the burden of sustaining the seizure. The contention of the government is that the heroin was seized incident to a lawful arrest; the arrest was concededly made without a warrant.

A hearing was held, on December 18, 1967, to determine whether the seizure was legal. The government presented two witnesses—the federal narcotics agents who made the arrest and who seized the narcotics. The defendant put on no witnesses.

The government contended that the arrest, though without a warrant, was legal, and the search incident thereto also legal, because the narcotics agents had probable cause to believe that defendant was violating the narcotics laws.[1]

Defendant makes two contentions. First, defendant contends the narcotics agents did not have probable cause to make the arrest. Second, he contends that even if they did have probable cause to arrest, they had time to procure a search warrant, and therefore the arrest and seizure are illegal.

On November 5, 1965, Agent Halpin received a phone call from a woman who refused to give her name. Her voice sounded like she was of Spanish extraction. The woman informed Halpin that she knew a Samuel Perez whose real name was Manuel Hernandez, and that Perez resided at 966 East 181st Street, Bronx, Apartment A–5. The woman further said that Perez was Cuban, illegally in the United States, and that he had been previously arrested by the New York City police for violating narcotics laws. The female informer said Perez dealt in narcotics and had large amounts of heroin in his apartment. She described Perez as being 5 ft. 7 inches; 150 lbs.; black, receding hair and brown eyes. At that time, she did not know Perez' phone number.

The same woman called later in the day and furnished Halpin with the number CY 8–9353. The agents determined from the telephone company that this number was listed as that of Samuel Perez, at the address given by the woman. Con Edison records showed that the utilities at that address were subscribed to by Samuel Perez.

A check of the Bureau of Narcotics files revealed two documents. The first is a letter to the Bureau from the F.B.I. This letter relates that on September 2, 1965, the F.B.I. received an anonymous telephone call containing substantially the same information that Halpin had been given. The caller was also a woman. She added, to the F.B.I., that Perez was a painter, and a member of the union, and in his early 40's.

The second document is an October 11, 1965, report by another narcotics agent. This reports the results of the agent's inquiries following the Bureau's receipt of the F.B.I. letter. This report shows that a Samuel Perez, of 966 East 181st Street, had been a member of the painters

---

1. Title 26, Section 7607 provides, in part: The Commissioner, Deputy Commissioner, Assistant to the Commissioner, and agents, of the Bureau of Narcotics of the Department of the Treasury, and officers of the customs (as defined in section 401(1) of the Tariff Act of 1930, as amended; 19 U.S.C., sec. 1401 (1)), may * * *

(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation.

"Reasonable grounds", as used in this section, is the equivalent of "probable cause". Wong Sun v. United States, 371 U.S. 471, 478 n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

union. His date of birth is given as March 20, 1926. A check of the Bureau records showed nothing on Hernandez. The records did cite the "alias", Samuel Perez, but the place of origin and place of birth did not correspond with this Manuel Hernandez, also known as Samuel Perez, as to his alleged origin and place of birth. The report states that inquiry to the New York city police revealed a narcotics arrest of Samuel Perez, born in Puerto Rico, March 21, 1926, living at 637 East 140th Street.[2] The criminal record revealed no deportation proceedings. Finally, this second document reveals that Immigration and Naturalization, New York, New York, had no record of Manolo Hernandez known as Samuel Perez.

The two narcotics agents who testified had procured, from the New York Police Department, a photograph of Perez.

Later in November the anonymous tipster again called the agents. This time she told them that Perez had a brother living at 637 East 140th Street and that the 181st Street apartment had a peephole in the door. The agents determined that one James Hernandez resided at the 140th Street address.

On November 29, 1965, the two agents by means of surveillance, determined that the defendant lived at the 181st Street address, and that the apartment did have a peephole. They identified defendant from the photograph obtained from the New York City police.

On November 30, 1965, at 9:30 P.M. the anonymous female caller again telephoned agent Halpin. This time she informed Halpin that Perez had just received a large shipment of heroin; that it was in his apartment in a manila envelope; and that he was going to move it immediately. The informer did not state the basis of her knowledge. The agents then determined that the CY 8–9353 number had been disconnected and

Perez had gotten an unlisted number at the same address.

Four agents then proceeded to 181st Street. Two entered the building and, as they approached apartment A–5, the door opened. They saw Perez and a manila envelope twenty five feet away. They relate that Perez saw them; he fidgeted with his hands, lost color in his face, and shuffled his feet. Halpin said, "Sammy Perez?" Defendant replied, "Who sent you?" The arrest was then made and the heroin seized.

■ The question presented is whether, at this point, the agents had probable cause or reasonable grounds to believe Perez was violating the narcotics laws. This court does not believe that the officers had "evidence which would 'warrant a man of reasonable caution in the belief' that a felony has been committed." Wong Sun v. United States, 371 U.S. 471, 479, 83 S.Ct. 407, 413, 9 L.Ed.2d 441 (1963). We thus suppress the 333 grams of heroin illegally seized.

Prior to the arrest in this case, the officers had verified information that:

1) Samuel Perez previously had been arrested by the New York City police on a narcotics charge;[2]

2) he resided at 966 East 181st Street;

3) his phone, CY 8–9353, had been changed to an unlisted number;

4) he had once given as his address, 637 East 140th Street, the address of one James Hernandez, said to be his brother; and

5) his 181st Street apartment had a peephole in the door.[3]

On November 30, 1967, before going to defendant's apartment for the purpose of arresting defendant, the officers had been told, by an anonymous telephone informant, that defendant had just received a large quantity of heroin which he would dispose of that night. The call was received about 9:30 P.M. on the night of

---

**2.** Apparently he was not convicted.

**3.** Counsel for defendant told this court that he (counsel) also had a peephole in his

door, and he believed that the New York Housing Code required one.

the arrest. The informer, a woman, never revealed her identity or the basis of her knowledge.

When the officers reached the door of defendant's apartment, they saw Perez fidget and lose color.

It is important to note that the officers' investigations, following the previous anonymous calls, established absolutely no facts which indicated that Perez had committed or was committing a crime. Moreover, the officers had "no basis in experience for confidence in the reliability of" the anonymous informer. Wong Sun v. United States, supra, at 480, 83 S.Ct. at 413. Further, the officers' investigations failed to confirm a very important fact provided by the anonymous informant, i. e., that Perez was illegally in this country. The investigation thus had cast substantial doubt on the reliability of the informer. Therefore, at the time of arrest the only information connecting Perez to any crime was the tip of this anonymous informant who had not proved to be fully accurate and who had not disclosed the basis of her knowledge. Under these circumstances, the narcotics agents lacked probable cause to believe Perez had committed or was then committing a crime. The arrest was, therefore, invalid and also the search.

In light of the recent Second Circuit decision in United States v. Soyka, 394 F.2d 443 (January 18, 1968), this court finds it unnecessary to consider at length the multitude of cases cited to it by the government and the defendant. Suffice it to say that the circumstances in the case before us are virtually identical to the facts in Soyka, except that in Soyka, the agents had grounds for believing the anonymous informant reliable because of prior experience with information supplied by the informer in prior cases. This court concludes that the agents lacked probable cause or reasonable grounds for the arrest, and that the heroin must be suppressed. United States v. Soyka, supra.

In view of this ruling, we need not consider defendant's other contention that the search was invalid because the agents had time to get a search warrant. See, however, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).